# Westney, Appellant, *v.* Arkwright et al.

*Equity—Specific performance—Time—Extension agreement—Husband and wife.*

1. Where a husband and wife execute an agreement to sell the wife's real estate, settlement to be made "within fifteen days from date" and time to be of the essence of the contract, and the wife secures an agreement of extension, which she claims she understood as an extension of the time of possession and not of the date of settlement, and the husband never signs or sees such ex-

tension, and does not expressly or impliedly agree to a postpone-
ment of the settlement, he cannot be compelled specifically to per-
form the contract after the date of settlement stated in the agree-
ment which he signed. ·

Argued April 23, 1925.    Appeal, No. 292, Jan. T.,
1925, by plaintiff, from decree of C. P. No. 5, Phila. Co.,
March T., 1923, No. 10056, dismissing bill in equity, in
case of John S. Westney v. Margaret Arkwright and
Matthew Arkwright.    Before MOSCHZISKER, C. J., FRA-
ZER, WALLING, KEPHART, SADLER and SCHAFFER, JJ.    Af-
firmed.

Bill for specific performance of contract to sell real
estate.    Before MONAGHAN, J.

The opinion of the Supreme Court states the facts.

Bill dismissed in opinion by MARTIN, P. J.    Plaintiff
appealed.

*Error assigned* was, inter alia, decree, quoting it.

*John McConaghy, Jr.,* for appellant.—The court below
should have found as facts that the wife definitely agreed
to a sixty-day extension of the contract of sale and that
the husband acquiesced in this extension.

A purchaser seeking specific performance of an agree-
ment which makes time of the essence of the contract,
must have offered to perform his part of the contract
within the time named : Doughty v. Cooney, 266 Pa. 337;
McBride's Est., 267 Pa. 250; McKuen v. Serody, 269
Pa. 284; Mansfield v. Redding, 269 Pa. 357; Piacentino
v. Young, 272 Pa. 556; Lucchese v. Kochanowsky, 273
Pa. 433; Shrut v. Huselton, 272 Pa. 113; Loughney v.
Quigley, 279 Pa. 396; Van Kirk v. Patterson, 201 Pa.
90; Welsh v. Dick, 236 Pa. 155; Schaffer v. Coldren, 237
Pa. 77; Paralka v. Grummel, 282 Pa. 235.

*Frank M. Cody,* for appellees.—There is no evidence
whatever which shows that the husband in any way or

manner, expressly or impliedly, agreed to any extension of the time of settlement. His knowledge of the extension of sixty days was from his wife and as it was for the purpose of giving her additional time in which to secure another place, he was satisfied therewith: Heckert v. Blumberg, 277 Pa. 159.

When a contract in express terms calls for the performance of the agreement by a day named and that time was to be the essence of the contract, the vendee must tender the purchase money on the day specified or otherwise lose his right to enforce the contract: Van Kirk v. Patterson, 201 Pa. 90; Doughty v. Cooney, 266 Pa. 337; McBride's Est., 267 Pa. 250; McKuen v. Serody, 269 Pa. 284; Mansfield v. Redding, 269 Pa. 357; Lucchese v. Kochanowsky, 273 Pa. 422; Saler v. Lessy, 76 Pa. Superior Ct. 15.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, May 18, 1925:

Plaintiff, assignee of the original vendee, asked specific performance of a contract for the sale of real estate. The bill was dismissed, "without prejudice to the rights of the plaintiff to proceed against [defendants] at law," and this appeal followed.

The contract, dated March 10, 1923, provides that "Matthew Arkwright and Margaret his wife" agree to sell the premises in controversy to Julius Kaltenstein for a named consideration; that settlement shall be made "within fifteen days from date," possession then to be given. The writing ends thus: "And, the said parties hereby bind themselves, their heirs, executors, administrators and assigns for the true and faithful performance of the terms of this agreement within fifteen (15) days from the date hereof, said time to be the essence of this agreement, unless extended by mutual consent in writing endorsed hereon." It is signed by all three parties thereto, Mr. and Mrs. Arkwright as vendors, and Kaltenstein as vendee.

After executing the above contract, Mrs. Arkwright, who owned the property, realizing that she could not well remove a business which she conducted on the premises, within the fifteen-day period, asked the real estate agents, who had brought her the purchaser, to obtain an extension of time. Mrs. Arkwright claims, and the weight of the evidence sustains her, that she had no idea of postponing the date of settlement beyond the fifteen days named in the contract; that she expected the deed to pass and the purchase money to be paid at the end of that time, but that she should be allowed to remain in possession of the property for an agreed period thereafter. In reply to her request, the real estate agents brought her one of the triplicate copies of the original agreement, with the following endorsement thereon, dated March 22, 1923: "I hereby agree to extend this agreement for a further period of sixty days from the date of this expiration. All other conditions to remain in force and effect."

Though Mrs. Arkwright's purpose was to obtain from the vendor permission to remain in possession on the property after the date originally fixed for settlement, she alone, so far as the proofs before us show, put her signature to the above memorandum of extension prior to the expiration of the fifteen-day period, and the fact that the purchaser subsequently signed it was never communicated to her; hence, when the time of settlement passed, and no message came from the vendee, she assumed that the sale was cancelled. Afterwards, when Mrs. Arkwright was asked to sign a new contract, fixing a date for settlement thirty days later than that named in the extension endorsement, she declined to do so, saying the original agreement was no longer in force.

The chancellor found, and the evidence shows, that "Matthew Arkwright signed, and was a party to, the contract of March 10, 1923; [but] he did not . . . authorize his wife either to procure an extension of time, or to sign the form dated March 22, 1923, nor was he

present when his wife signed it.    Furthermore, he never had any communication, oral or written, with Smullen & Barry [the real estate firm hereinbefore referred to], or their representatives, or with Julius Kaltenstein, or John Westney, the plaintiff, or with any person representing them or [any] of them, concerning the matter of the extension of time.    Matthew Arkwright did not sign, and never saw, the alleged agreement for extension of time, dated March 22, 1923.    [He] never did anything, by words or conduct, to lead Smullen & Barry, or their representatives, or Julius Kaltenstein, or John Westney, to believe that he acquiesced in, encouraged, or advised an extension of time for the performance of the contract of March 10, 1923."

Appellant contends, however, that "the court below should have found as facts that the wife definitely agreed to a sixty-day extension of the contract of sale and that the husband acquiesced in this extension."

True, the memorandum of March 22nd may be, in form, a general extension of all the terms of the original contract, and, were Mrs. Arkwright the only defendant in the case, perhaps it might be legally binding as such, but, as already stated, the evidence shows that it was not so understood by her when she signed it, and *this fact is important to be kept in mind* when considering whether or not her husband (the other party to the original contract, against whom also a decree of specific performance is asked) "acquiesced in this extension" *in such a way and to such an extent as* to bind him in law.

The testimony depended on to prove that Mr. Arkwright did so "acquiesce," simply shows that he knew the terms of the original contract, that his wife told him of her desire to remain in the house longer than it allowed and informed him that "she had got her sixty-day extension."    Finally, he said that "as long as she was satisfied to have the extension, I was satisfied"; but he also said, and this was not denied, that he never

saw the paper his wife had signed and knew nothing. of its details. In short, so far as this expression of satisfaction on his part is concerned, it may well be understood from the witness's testimony that, when Mrs. Arkwright learned of the construction placed on the memorandum of extension by appellant and was dissatisfied therewith, he likewise was dissatisfied.

Viewing the evidence as a whole, and the testimony of the husband in particular, we cannot say the court below erred in refusing to find that Mr. Arkwright acquiesced in, or waived his right to object to, the sixty-day extension, which is now sought to be enforced as though incorporated in the original contract; in this connection, it is to be noted that he had never seen the writing that evidenced the extension nor had he done anything to mislead the purchaser or the latter's assignee into the belief that he had authorized its execution or agreed to its terms. Since Mrs. Arkwright was his sole source of information, the probability, supported by the evidence on the subject, is that her husband assumed the so-called extension merely granted them the right to occupy the property for sixty days after settlement, not that the date fixed for settlement was thereby postponed.

Under all the circumstances, as no decree for specific performance can be entered against defendant Matthew Arkwright, we shall not discuss whether, on the basis of the writing in question, the chancellor "should have found . . . that the wife definitely agreed to a sixty-day extension of the contract of sale." We concur in the view of the court below that, since it is necessary to dismiss the bill as to Matthew Arkwright, a decree for specific performance cannot be entered against his wife alone; and, in point of fact, the bill asks no such relief.

The authorities cited by counsel all differ in their facts from the case before us, and only one of them calls for notice. Appellant depends particularly upon Par-

alka v. Grummel, 282 Pa. 235, but that case is readily distinguishable from the present one. There, defendants, tenants by entireties, entered into an agreement to sell their real estate to plaintiffs, settlement to be made upon a given date. Subsequently, "it was mutually agreed that the time for settlement should be postponed until January 1, 1923"; but, when that day arrived, defendants refused to abide by the agreement. Within a week thereafter, plaintiffs notified defendants they were ready to pay for the property and would do so on January 9th, but the latter failed to appear at the time and place fixed for settlement. In affirming a decree for plaintiffs, we held, the court below having found that the vendors had caused the original delay, and, further, that January 9th was a reasonable time for settlement, after the mutual postponement of the first date agreed upon, the case could properly be said to fall within the rule "that a party cannot insist upon strict performance at the time [originally] stipulated if he has been the cause of delay, or is himself in default"; and we added that, under such circumstances, "If a tender of performance is made by the other party within a reasonable time, specific performance will be decreed." On the question of the power of the wife to act for her husband in extending the time for performance, we said: "The uncontradicted evidence is that the husband, who......left the care and management of the property to his wife ......had directed her to make arrangements for settlement in this case"; in other words, as previously stated in that opinion, there was "ample evidence" to sustain a finding that Mrs. Grummel acted "for herself and her husband" in all the transactions involved in the case. There we affirmed the findings and conclusions of the court below, while here we are asked to reverse them, which is quite a different thing. In the present case, the court below has found that the wife did not act for her husband and that he had not either expressly or impliedly agreed to a postponement; that the original

date for settlement was March 25, 1923, and no settlement was tendered till some two months thereafter; that this long delay was in no sense attributable to the husband, and hence no decree for specific performance could be made against him. The two cases differ essentially in their facts, and the one does not control the other.

The decree is affirmed at cost of appellant.